UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

C.A. No.: 2011-CV-30199

| | |
|---|---|
| **ROBERT BAGG, DAVID CROTTY, KATHLEEN GEISSE, CRYSTAL DILLON and LESLIE JOHNSTON Individually and on Behalf of All Other Persons Similarly Situated,** | |
| **Plaintiffs,** | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| **HIGHBEAM RESEARCH, INC., THE GALE GROUP, INC., and CENGAGE LEARNING, INC.,** | |
| **Defendants.** | |

## INTRODUCTION

Defendants HighBeam Research, Inc. ("HighBeam Research"), The Gale Group, Inc. ("Gale") and Cengage Learning, Inc. ("Cengage") (collectively, "Defendants" or "HighBeam"), by and through their undersigned counsel, O'Shea Getz P.C. and Satterlee Stephens Burke & Burke LLP, respectfully submit this memorandum of law in support of their renewed motion to dismiss plaintiffs Robert Bragg, David Crotty, Kathleen Geisse, Crystal Dillon, and Leslie Johnston's (collectively, "plaintiffs") First Amended Complaint (the "Amended Complaint") pursuant to 12(b)(6) of the Federal Rules of Civil Procedure and the Court's Memorandum and Order dated May 17, 2012 (the "Order").

On May 17, 2012, the Court denied Defendants' motion to dismiss the Amended Complaint without prejudice so that the parties could engage in limited discovery on factual questions the Court raised in its Order. Specifically, the Court articulated three discrete

questions that needed to be resolved before the Court could grant Defendants' motion to dismiss the Amended Complaint on the basis of the forum selection clause contained in the HighBeam Research User Agreement (the "Agreement") that plaintiffs' assented to prior to using and in order to use Defendants' services on the HighBeam website.

As set forth below and in the Declaration of Patrick J. Markey in support of the renewed motion to dismiss ("Markey Declaration") and the exhibits annexed thereto, the parties exchanged informal discovery that conclusively establishes that each plaintiff <u>necessarily</u> assented to the Agreement containing the forum selection clause providing exclusive venue in Illinois <u>prior</u> to entering into any relationship with Defendants.  Thus, any alleged injurious relationship that each plaintiff could conceivably have had with Defendants would fall within the scope of the Agreement.  Moreover, discovery has confirmed that HighBeam merged into Gale in 2008 (and that Cengage and Gale are both wholly-owned subsidiaries of the same parent corporation) and, therefore, the Agreement inures to the benefit of Defendants.[1]

Accordingly, the Amended Complaint should now be dismissed in its entirety on the basis of the Agreement's forum selection clause pursuant to Rule 12(b)(6).

## <u>PROCEDURAL HISTORY</u>[2]

In its Order, the Court identified three unresolved factual issues – based largely on plaintiffs' speculation and assertions raised in opposition to the motion to dismiss – that warranted limited discovery before the Court could grant Defendants' motion.  Specifically, the Court held that discovery was necessary to confirm that the Agreement applies to plaintiffs'

---

[1] In fact, discovery has confirmed that Cengage is not a proper defendant in any event because it has no direct involvement or relationship with the HighBeam website and services, Gale or the pre-merger entity HighBeam.

[2] Defendants respectfully refer the Court to Defendants' initial motion papers for a full recitation of the relevant facts.

claims in their entirety and applies to all defendants.  See Order at 8, 10, 12, 12 n.4, and 16.  In this regard, the Court articulated as follows the questions necessitating discovery:

(1) "[W]hether Plaintiffs in fact were required to click on an 'I agree' screen button when they signed up for free trials from 2006 to 2010 and, if so, whether that agreement was substantively identical to the one now before the court and contained a forum selection clause;"

(2) Whether "consumers could involve themselves in an injurious relationship with Defendants without assenting to the Agreement;" and

(3) Whether the relationship among Defendants establishes that the Agreement inures to the benefit of Gale and Cengage.

See id. at 15-16.

In response to the Court's Order, the parties informally requested certain discovery on these issues and, thereafter, exchanged documents, completing that exchange on June 19, 2012.  See Declaration of Patrick Markey ("Markey Decl.") at ¶¶ 2-3; see also Joint Status Report, filed May 31, 2012 (setting forth the scope and content of the discovery the parties requested from each other).  In conjunction with their production of documents, the Defendants also offered to plaintiffs an affidavit from the supervisor of the HighBeam website, Robyn Doughtery.  See Markey Decl. at Ex. 1; see also id. at ¶ 7 and Ex. 3 (restating offer to provide affidavit to plaintiffs in email dated July 13, 2012).  The documents exchanged on June 15 and June 19, 2012 confirmed that each plaintiff necessarily assented to the Agreement prior to entering into any alleged injurious relationship with Defendants, and confirmed that the Agreement each plaintiff assented to requires that all their claims asserted in this action must be brought in Illinois.

3

Following the informal document exchange, Defendants asked plaintiffs whether they required formal discovery pursuant to the Court's Order or, in the alternative, again asked whether they wanted an affidavit from the supervisor of the HighBeam website. See id. at ¶¶ 6-8, 10 and Exs. 3 and 4. Plaintiffs did not respond to Defendants' offers for additional discovery, did not serve any formal discovery requests and did not request an affidavit from Defendants. See id. at ¶¶ 9, 11. In fact, despite Defendants' repeated attempts to illicit plaintiffs' response and statements that Defendants intended to renew their motion to dismiss, plaintiffs failed to reply at all to Defendants' inquiries concerning additional or formal discovery. Id. at ¶¶ 6-11.

Instead, apparently recognizing that the discovery exchanged lay bare their speculation concerning the Agreement and demonstrated that Illinois is the proper forum for each purported plaintiff's claims, plaintiffs sought Defendants' consent to transfer to Illinois or, in the alternative, voluntarily dismiss this action so that plaintiffs could re-file the action in Illinois. However, plaintiffs conditioned their willingness to voluntarily dismiss on Defendants' agreement that the statute of limitations on their purported claims would be tolled from the filing of this action until the voluntary dismissal. See id. at ¶ 4. Defendants refused to consent to transfer or to toll the statute of limitations, see id. at ¶ 5, given that dismissal under Rule 12(b)(6) is now proper on this record and because plaintiffs have known since before they filed the Amended Complaint that the forum selection clause in the Agreement is fatal to this action.[3]

---

[3] As the Court will recall, Defendants wrote a lengthy letter in May 2011 addressing the merits of plaintiffs' purported claims – highlighting, inter alia, the validity of the Agreement's forum selection clause – and plaintiffs chose to brazenly ignore the forum selection clause and proceeded to file their Amended Complaint in this Court. See Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, filed October 28, 2011, at 2 n.2 and Ex. A to Declaration of Justin E. Klein, filed October 28, 2011.

## ARGUMENT

**A.     Standard**

As set forth in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, filed October 28, 2011 ("Defendant's First Brief"), it is well settled in the First Circuit that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) – and not transfer – is the appropriate remedy for a case filed in contravention of a forum selection clause. See Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387 (1st Cir. 2001) ("[T]he law of this Circuit . . . [is that] a motion to dismiss based upon a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6)."); Lambert v. Kysar, 983 F.2d 1110, 1112, n.1 (1st Cir. 1993) (same); Reder Enters., Inc. v. Loomis, Fargo & Co., Corp, 490 F. Supp. 2d 111, n.1 (D. Mass. 2007) (same); see also LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4, 7 (1st Cir. 1984) (providing reasoning for dismissal pursuant to a forum selection clause under Rule 12(b)(6)).[4]  Accordingly, as set forth below and for the reasons set forth in the Order, the Amended Complaint should now be dismissed.

**B.     Prior Holdings**

In its Order, the Court noted that forum selection clauses in clickwrap agreements, like the Agreement at issue here, are routinely upheld as valid and enforceable. See Order at 9-10.  In

---

[4] Here, unlike a typical 12(b)(6) motion, the parties have exchanged informal discovery that is now before the Court on this renewed motion pursuant to the Order.  However, this discovery and affidavit are only addressed to the Agreement that the Court has previously held it can rely on in resolving Defendants' 12(b)(6) motion. See Order at 6-7.  Accordingly, Defendants do not believe that the limited materials before the Court on this renewed motion pertain to "matters outside the pleadings" under Rule 12(d) requiring that the Court treat this motion as one under Rule 56.  However, even if the Court were to find that the materials submitted in connection with this renewed motion are "outside the pleadings," Defendants respectfully submit that because the Court in its Order already gave Plaintiffs the opportunity to conduct informal and formal discovery pertinent to this motion, there is no need to allow for any further discovery, and this motion should be resolved now.

addition, the Court recognized that the forum selection clause in the Agreement was broad enough to include all of plaintiffs' purported claims.  See id. at 10-14.

In its Order, the Court reserved for future consideration the following factual questions upon which the parties subsequently conducted limited discovery:  (1) whether plaintiffs were required to click on an "I agree to the terms and conditions" screen button when they signed up for trial subscriptions from 2006 to 2010 and whether the agreements from 2006 to 2010 were substantively identical to the Agreement submitted in connection with Defendants' initial motion and like that Agreement contained a forum selection clause; (2) whether the plaintiffs were required to assent to the Agreement prior to involving themselves in any allegedly injurious relationship with Defendants; and (3) whether Defendants' relationship among themselves is such that the Agreement inures to the benefit of each.[5]  As set forth below, each question can now be answered in the affirmative.

## C.   Discovery Establishes that the Amended Complaint Must Be Dismissed

### 1.   Discovery Issue One

As to the initial portion of the Court's first question, i.e., whether it was necessary for plaintiffs to click an "I agree" screen button before completing the sign-up process from 2006 to 2010 for a trial subscription to the HighBeam website, Defendants produced screenshots from the HighBeam website's trial subscription sign-up process as it functioned in 2007 and 2008. See Markey Decl. at ¶ 2 and Ex. 1.  Plaintiffs did not produce any screenshots or other documents regarding this issue from the period of time between 2006 and 2010.  See id. at ¶ 3.

---

[5] In its Order, the Court noted that plaintiffs allegedly signed up for HighBeam's services only in 2006 and in 2010.  See Order at 5 n.1.  However, in the informal exchange, Defendants produced all available documents from 2006 to 2010, pursuant to the Order.  As set forth below, all of these documents are consistent with the documents submitted and support the arguments asserted by Defendants in their original motion to dismiss.

The screenshots of the HighBeam website registration process show that any consumer would have had to click the box beside the statement "I agree to the terms and conditions." prior to completing the registration process and gaining access to Defendants' services.  See id., Ex. 1. Indeed, these screenshots make it clear that assenting to the Agreement was required in one of the first steps of the sign-up process, and was necessary before the consumer could proceed with the process and enter his or her name or credit card information.  See id.  This is consistent with the screenshots provided in connection with Defendants' original motion.  See Defendants' First Br. at 4-5.

In addition to this documentary evidence, Robyn Doughtery, who supervises the HighBeam website's operations, confirmed that consumers' assent to the Agreement prior to completing the registration process, as shown in the screenshots from 2007 and 2008, has been a requirement on the HighBeam website for all years since 2005.  See Affidavit of Robyn Doughtery ("Doughtery Affidavit") at ¶¶ 6-8, annexed as Ex. 5 to the Markey Decl.  Ms. Doughtery further explained that since 2005, "unless a user agrees to the User Agreement, by clicking the box confirming the user's assent, the user may not subscribe to the Website and cannot access full copies of the Website's articles."  Id. at ¶ 8.

Based on the documents Defendants produced and the Doughtery Affidavit, it is clear that in 2006 and 2010 plaintiffs were required to have clicked the "I agree" screen button before allegedly completing the sign-up process for trial subscriptions on the Highbeam website for Defendants' services.

As to the remainder of the Court's first question, i.e., whether the agreements from 2006 to 2010 were substantively identical to and contained the forum selection clause contained in the Agreement before the Court on Defendants' initial motion, the parties exchanged copies of the

Agreement from 2006, 2007, 2008 and 2010.  <u>See</u> Markey Decl. at ¶¶ 2 and 3 and Exs. 1 and 2.

The content of the copies of the Agreement produced by the parties during discovery is

substantially the same as the Agreement submitted with Defendants' initial motion to dismiss.  In

fact, Ms. Dougherty, in her affidavit, states that she believes "that the content of the User

Agreement on the Website has not materially changed since 2006, except to update the business

address stated in provisions 2.4 and 3.5."  Dougherty Aff. at ¶ 4.

More specifically, each version of the Agreement produced by the parties contains a

forum selection clause that is absolutely identical to the forum selection clause in the Agreement,

from 2011, submitted with Defendants' original motion.  <u>Cf.</u> Ex. 1 to Markey Decl. <u>and</u> Ex. B to

Declaration of Justin E. Klein, filed October 28, 2011.   For the years 2006 to 2011, the

Agreement's forum selection clause has provided:

> This Agreement, your performance under it, any disputes arising under it
> shall be governed exclusively by the laws of the United States of America
> and the State of Illinois, without giving effect to their conflict of laws
> principles. You expressly consent to the exclusive forum, jurisdiction, and
> venue of the Courts of the State of Illinois in Cook County and the United
> States District Court for the Northern District of Illinois in any and all
> actions, disputes, or controversies relating to this Agreement.

<u>See</u> <u>id.</u>; <u>see also</u> Doughtery Aff. at ¶ 4.

Accordingly, the plaintiffs who assented to the Agreement in 2006 and 2010 consented to

the "exclusive forum, jurisdiction and venue of Courts of the State of Illinois" for "any disputes

arising under" the Agreement.

   2.  **<u>Discovery Issue Tw</u>**o

The documents exchanged by the parties and the Doughtery Affidavit also resolve the

second question set forth by the Court, i.e., whether plaintiffs could have been involved in an

allegedly injurious relationship with Defendants without assenting to the Agreement.  Plaintiffs did not produce any documents responsive to this factual issue.  <u>See</u> Markey Decl. at ¶ 3.

As set forth in the previous subsection, the screenshots of the HighBeam website's registration process from 2007 and 2008 demonstrate that, in order to use Defendants' services, plaintiffs had to agree to the Agreement's terms and conditions.  <u>See</u> <u>id.</u>, Ex. 1.  Ms. Doughtery further confirms that consent to the terms and conditions of the Agreement has been required of all HighBeam users since at least 2005.  Doughtery Aff. at ¶¶ 6-8.  Moreover, the screenshots show users were required to assent to the Agreement before providing their credit card information, see Ex. 1 to Markey Decl., and Ms. Dougherty further explains that "[a]t all times since 2005, the Website registration process has been designed to require – and has required – that users agree to the User Agreement to complete the registration process [and that Defendants] . . . have only [] charged the credit cards of subscribers to the Website, i.e., users who completed the Website registration process."  Dougherty Aff. at ¶ 9.

Based on this discovery and the Dougherty Affidavit, there is no evidence that plaintiffs could have been injured by Defendants prior to assenting to the Agreement which, in turn, requires plaintiffs to have brought their claims in Illinois.

**3.  <u>Discovery Issue Three</u>**

Finally, Defendants produced documents establishing the relationship among the defendant entities.  <u>See</u> Markey Decl. at ¶ 2 and Ex. 1.  The Certificate of Merger shows that, in 2008, HighBeam Research merged into Gale, and the corporate organizational chart shows that Gale and Cengage are sister subsidiaries wholly owned by the same parent entity, Cengage Learning Holding II, LP.  <u>See</u> <u>id.</u>, Ex. 1.  Based on Gale's relationship to HighBeam Research, as a successor by merger, it is clear that the Agreement is binding upon Gale and inures to its

9

benefit.[6]  To the extent that Cengage, through its relationship with Gale as a sister subsidiary, is not bound by the Agreement, the parties' discovery has shown that Cengage is not a proper defendant in this action because it has no direct involvement or relationship with the HighBeam website and services, Gale or the pre-merger entity HighBeam Research.  Plaintiffs produced no discovery that is to the contrary.

## CONCLUSION

Because each plaintiff necessarily assented to the Agreement and thereby consented to the exclusive forum in Illinois of any dispute under the Agreement prior to entering into any allegedly injurious relationship with Defendants, plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted and must now be dismissed.

Dated:    August 17, 2012

Respectfully submitted,


By:____/s/Patrick J. Markey___
          Patrick J. Markey, Esq.
O'Shea Getz P.C.
1500 Main Street, Suite 912
Springfield, MA 01115
Phone (413) 731-3100
Fax (413) 731-3101
BBO No. 563532

James F. Rittinger*
Justin E. Klein*
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York  10169
(212) 818-9200
*Attorneys for Defendants*
*admitted pro hac vice*

---

[6] Defendants note that provision 12.1 of the Agreement, stating that it "shall be binding upon and inure to the benefit of HighBeam and its successors, trustees, and assigns," is identical in each copy of the Agreement from 2006, 2007, 2008, 2010 and 2011 now before the Court.  See Markey Decl., Exs. 1 and 2 and Ex. B to the Declaration of Justin E. Klein, filed October 28, 2011.

10

## CERTIFICATE OF SERVICE

       I, Patrick J. Markey, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this 17th day of August, 2012.

                                        /s/Patrick J. Markey
                                    Patrick J. Markey, Esq.